**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JOHNELL PARRISH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 25-cv-01790-LKG |
| v. | ) | |
| | ) | Dated: July 20, 2026 |
| NATIONSTAR MORTGAGE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

## I.   INTRODUCTION

In this civil action, the Plaintiff, Johnell Parrish, brings claims under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C.A. § 2605 (West), the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law § 14-201 *et seq.* (West), and the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-101 *et seq.* (West), against the Defendant, Nationstar Mortgage, LLC ("Nationstar"), arising from Nationstar's attempts to collect the outstanding payments due on a mortgage loan. *See generally* ECF No. 3.  Nationstar has moved to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(6).  ECF Nos. 15 and 15-1.  The motion is fully briefed.  ECF Nos. 15, 15-1, 16 and 17.  No hearing is necessary to resolve the motion.  L.R. 105.6 (D. Md. 2025).  For the reasons that follow, the Court: (1) **GRANTS-in-PART** and **DENIES-in-PART** the Defendant's motion to dismiss (ECF No. 15) and (2) **DISMISSES** the Plaintiff's RESPA statutory damages claim in Count 1 of the complaint and Counts 2 and 3 of the complaint.

## II.   FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.   Factual Background

In this civil action, the Plaintiff brings RESPA, MCDCA and MCPA claims against Nationstar, arising from Nationstar's attempts to collect the outstanding payments due on a mortgage loan.  *See generally* ECF No. 3.  In the complaint, the Plaintiff asserts the following three claims against Nationstar: (1) RESPA violation (Count 1); (2) MCDCA violation

---

[1] The facts recited in this memorandum opinion are taken from the complaint; the Defendant's motion to dismiss and the memorandum in support thereof; the Plaintiff's response in opposition thereto; and the Defendant's reply brief.  ECF Nos. 3, 15, 15-1, 16 and 17.

(Count 2); and MCPA violation (Count 3). ECF No. 3 at ¶¶ 31-52. As relief, the Plaintiff seeks to recover monetary damages and attorney's fees and costs from Nationstar. *Id.* at ¶ 12.

The Parties

Plaintiff Johnell Parrish is a resident of Maryland and he is the son of the deceased owner of a certain real property located at 624 Ray Drive, Silver Spring, Maryland. *Id.* at ¶¶ 2 and 11.

Defendant Nationstar is a mortgage servicer and lender that does business in Maryland. *Id.* at ¶¶ 4-6.

Case Background

As background, the Plaintiff's deceased mother, Betsy Parrish, was the owner of a certain real properly located at 624 Ray Drive, Silver Spring, Maryland (the "Property"), which was financed by a mortgage loan held by Fannie Mae and serviced by Nationstar. *Id.* at ¶¶ 2 and 11-12. Betsy Parrish passed away on December 2, 2023. *Id.* at ¶ 11.

The Plaintiff alleges that, on January 19, 2024, Nationstar sent Betsy Parrish a notice stating that the January 7, 2024, mortgage transaction on her mortgage loan did not go through, because her bank account had closed. *Id.* at ¶ 12. The Plaintiff also alleges that he then notified Nationstar of his mother's death in January of 2024. *Id.* at ¶ 13.

On February 6, 2024, Nationstar sent a letter addressed to the "Estate of Betsy Parrish" stating that it had accepted the documentation provided by the Plaintiff certifying the death of his mother. *Id.* at ¶ 14. The Plaintiff alleges that Nationstar sent the Estate of Betsy Parrish a Notice of Intent to Foreclose ("Notice") on the Property on March 14, 2024, which stated that: "You have a right to cure the default. To cure the default, you must pay the total amount past due of $7,510.42 by 04/28/2024 (or if said date falls on Saturday, Sunday, or legal holiday, then on the first business day thereafter)." *Id.* at ¶ 15.

In this regard, the Plaintiff alleges that he purchased a cashier's check in the amount of $7,510.42 to pay the outstanding mortgage payment and that he sent this check to Nationstar on April 6, 2024. *Id.* at ¶ 16. But the Plaintiff alleges that Nationstar rejected his payment, "[d]espite the facts that [he] followed Nationstar's instructions" and that Nationstar "continued to charge additional fees and interest related to the purported delinquency and continued to proceed with threats of foreclosure." *Id.* at ¶ 18.

The Plaintiff alleges that Nationstar sent him a letter confirming his status as successor in interest for the Property on April 30, 2024. *Id.* at ¶ 17. The Plaintiff also alleges that, on May 20, 2024, Nationstar sent him a second Notice addressed to the Estate of Betsy Parrish,

stating that a payment of $14,933.72 was due by July 4, 2024, to cure the default on the mortgage loan. *Id.* at ¶ 19.

The Plaintiff alleges that he sent another check to Nationstar, in the amount of $14,933.72, on July 1, 2024. *Id.* at ¶ 21. But Nationstar again rejected the check. *Id.* at ¶¶ 21-22.

The Plaintiff alleges that, on July 30, 2024, he sent a Qualified Written Request/Notice of Error ("QWR/NOE") to Nationstar listing the following four servicing errors: (1) Nationstar failed to accept his $7,510.42 payment on April 6, 2024, despite Nationstar's assertion that $7,510.42 was due by April 28, 2024, to cure the default on the mortgage; (2) Nationstar failed to accept his $14,933.72 payment on July 2, 2024, despite Nationstar's assertion that $14,933.72 was due by July 4, 2024, to cure the default on the mortgage; (3) the fees and interest charged on the account since April 6, 2024, when Nationstar failed to accept the Plaintiff's $7,510.42 payment, are in error; and (4) the fees and interest charged on the account since July 2, 2024, when Nationstar failed to accept the Plaintiff's $14,933.72 payment, are in error. *Id.* at ¶ 23. On August 13, 2024, Nationstar responded to the Plaintiff's QWR/NOE, stating that the $14,933.72 quoted in the May 20, 2024, Notice was required to cure the default on the day it was sent, but, to cure the default, the Plaintiff needed to contact Nationstar directly to request a reinstatement amount, which would include all past due payments and fees. *Id.* at ¶ 24. The Plaintiff also alleges that his QWR/NOE requested, among other things, "[a] breakdown of the amount of claimed arrears or delinquencies on the account, including an itemization of all fees and charges [Nationstar] claim[s] are currently due," but Nationstar responded with an aggregated "Corporate Advance Balance" without explaining what fees were included. *Id.* at ¶¶ 26-27.

The Plaintiff alleges that he continued to attempt to pay Nationstar, but he was constantly met with promises for callbacks and "suspicious" instructions. *Id.* at ¶ 28. And so, the Plaintiff filed a complaint with the Maryland Office of the Comptroller Currency. *Id.* at ¶ 29. On October 1, 2024, the Plaintiff received a refund in the amount of $7,510.42 from his bank, Citibank N.A., reflecting the funds that he had sent to Nationstar in April of 2024. *Id.*

The Plaintiff contends that he "has been damaged by Nationstar's actions and inactions, including out of pocket expenses, loss in equity, several months without the $7,510.42 funds from the cashier's check, and emotional distress concerning the potential loss of the [Property]." *Id.* at ¶ 30. And so, the Plaintiff seeks to recover monetary damages, attorney's fees and costs from Nationstar. *Id.* at ¶ 12.

3

### B.    Relevant Procedural Background

The Plaintiff commenced this civil action on April 16, 2025, in the Circuit Court for Montomgery County, Maryland.  ECF No. 1-2.  On June 5, 2025, Nationstar removed the case to this Court.  ECF No. 1.

On September 5, 2025, Nationstar filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and memorandum in support thereof.  ECF Nos. 15 and 15-1.  On October 30, 2025, the Plaintiff filed a response in opposition to Nationstar's motion.  ECF No. 16.  Nationstar filed a reply brief on November 11, 2025.  ECF No. 17.

The Defendant's motion to dismiss having been fully briefed, the Court resolves the pending motion.

## III.   LEGAL STANDARDS

### A.    Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  (citing *Twombly*, 550 U.S. at 556).  When evaluating the sufficiency of the plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted).  But the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." *Nemet Chevrolet, Ltd.*, 591 F.3d at 255.  And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Priv. Placement Partners II, L.P. v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249–50 (1989)).

### B.    Fed. R. Civ. P. 9(b)

Federal Rule of Civil Procedure 9(b) provides that claims that sound in fraud are subject to a heightened pleading standard, which requires that "the circumstances constituting fraud" be stated "with particularity." Fed. R. Civ. P. 9(b).  And so, this Court has held that a plaintiff must plead with particularity, "who made what false statement, when, and in what

4

manner . . .; why the statement is false; and why a finder of fact would . . . conclude that the defendant acted with scienter . . . and with the intention to persuade others to rely on the false statement." *Dominion Fin. Servs., LLC v. Pavlovsky*, 673 F. Supp. 3d 727, 747 (D. Md. 2023) (alterations in original) (quoting *McCormick v. Medtronic, Inc.*, 101 A.3d 467, 492–93 (2014)).

### C.    Real Estate Settlement Procedures Act

To state a claim under the Real Estate Settlement Procedures Act's qualified written request ("QWR") provisions, a plaintiff must plausibly allege facts to show: "(1) a written request that meets RESPA's definition of a QWR, (2) the servicer failed to perform its duties, and (3) actual damages." *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 417 (D. Md. 2018) (citations omitted). In this regard, RESPA defines a QWR as:

> [A] written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—includes, or otherwise enables the servicer to identify, the name and account of the borrower; and includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). RESPA also defines "servicing" as:

> [R]eceiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3). In addition, Regulation X defines "error," in relevant part, as the "[f]ailure to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law," and "[i]mposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower." 12 C.F.R. § 1024.35(b)(2) and (5). Regulation X also requires that the servicer provide a substantive response within thirty business days of a borrower's request for information. *See id.* § 1024.35(e).

Lastly, a plaintiff must allege facts to show actual damages to state a plausible RESPA claim. To recover actual damages, a plaintiff must show that such damages arose "as a result of" the servicer's alleged violation. *Fox v. Statebridge Co., LLC*, 629 F. Supp. 3d 300, 310 (D. Md. 2022) (citing 12 U.S.C. § 2605(f)(1)(A)). A plaintiff may also recover statutory

damages, upon a showing that the defendant engaged in "a pattern or practice of noncompliance" with the requirements of Section 2605.  12 U.S.C. § 2605(f)(1)(B); *see also Akkus v. Rocket Mortg., LLC*, 715 F. Supp. 3d 726, 732 (D. Md. 2024).  But a plaintiff who fails to establish actual damages may not recover statutory damages.  *Akkus*, 715 F. Supp. 3d at 735.  And so, this Court has held that "[t]he only relief available under RESPA is an award of actual damages, along with additional damages in particularized circumstances."  *Fox*, 629 F. Supp. 3d at 310.

### D.    The Maryland Consumer Debt Collection Act

The Maryland Consumer Debt Collection Act prohibits, among other things, a debt collector from "[c]laim[ing], attempt[ing], or threaten[ing] to enforce a right with knowledge that the right does not exist," or "[e]ngag[ing] in any conduct that violates §§ 804 through 812 of the Fair Debt Collection Practices Act" ("FDCPA").  Md. Code Ann., Com. Law § 14-202(8) and (11).  In this regard, the FDCPA "protects consumers from the abusive and deceptive practices employed by some debt collectors."  *Spencer v. Hendersen-Webb, Inc.*, 81 F. Supp. 2d 582, 590 (D. Md. 1999) (citation omitted).  The Court has also held that a MCDCA claim is subject to the heightened pleading standard under Fed. R. Civ. P. 9(b), which requires a plaintiff to plead "with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *see also Butler v. Citizens Bank, N.A.*, No. 17-3417, 2018 WL 2840413, at *4, *5 (D. Md. June 11, 2018).

To state a claim under the MCDCA, a plaintiff must allege facts to show that: "(1) the defendant 'did not [possess] the right to collect the amount of debt sought'; and (2) the defendant 'attempted to collect the debt knowing that they lacked the right to do so.'"  *Barr*, 303 F. Supp. 3d at 420 (quoting *Lewis v. McCabe, Weisberg & Conway, LLC*, No. 13-1561, 2014 WL 3845833, at *6 (D. Md. Aug. 4, 2014) (citation omitted)).  The "knowledge" requirement under the MCDCA requires the plaintiff to show that the defendant "attempt[ed] to enforce a right with actual knowledge or with reckless disregard as to the falsity of the existence of the right."  *Fontell v. Hassett*, 870 F. Supp. 2d 395, 407 (D. Md. 2012) (internal citations and quotation marks omitted).  But, Section 14-202(11) of the MCDCA contains no knowledge requirement.  *Parker v. Goldman Sachs Mortg. Co. Ltd. P'shp*, 596 F. Supp. 3d 559, 569 (D. Md. 2022).

### E.    The Maryland Consumer Protection Act

Lastly, the Maryland Consumer Protection Act prohibits unfair, abusive, or deceptive trade practices, including, "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity,

tendency, or effect of deceiving or misleading consumers; and failure to state a material fact if the failure deceives or tends to deceive." Md. Code Ann., Com. Law § 13-301(1) and (3). To state a claim under the MCPA, a plaintiff must allege facts to show that: "(1) the defendant engaged in an unfair or deceptive practice or misrepresentation, (2) the plaintiff relied upon the misrepresentation, and (3) doing so caused the plaintiff actual injury." *Barr*, 303 F. Supp. 3d at 416 (quoting *Palermino v. Ocwen Loan Servicing, LLC*, No. 14-0522, 2015 WL 6531003, at *2 (D. Md. Oct. 26, 2015) (citation omitted)). In addition, a MCPA claim is subject to the heightened pleading standard under Fed. R. Civ. P. 9(b), which requires a plaintiff to plead "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 465 (D. Md. 2013).

## IV.    ANALYSIS

Nationstar has moved to dismiss this matter, pursuant to Fed. R. Civ. P. 12(b)(6), upon the following three grounds: (1) the Plaintiff fails to state a RESPA claim, because: (a) the Plaintiff fails to allege a RESPA or Regulation X violation; (b) the Plaintiff fails to allege damages; and (c) Nationstar's alleged actions do not demonstrate a pattern and practice of noncompliance with RESPA; (2) the Plaintiff fails to state a MCDCA claim, because he fails to sufficiently allege facts to show that Nationstar knowingly asserted a right that did not exist; and (3) the Plaintiff's MCPA fails as a matter of law, because the Plaintiff does not sufficiently allege that Nationstar made a misrepresentation, or use an unfair or deceptive trade practice, upon which the Plaintiff relied to his detriment. ECF No. 15-1 at 6-14. And so, Nationstar requests that the Court dismiss the complaint. *Id.* at 15.

In his response in opposition to Nationstar's motion, the Plaintiff counters that the Court should not dismiss his RESPA claim, because he has alleged facts to show: (1) that Nationstar committed a servicing error; (2) that Nationstar's response and investigation were unreasonable; and (3) actual damages and a pattern and practice of noncompliance with RESPA. ECF No. 16 at 6-13. The Plaintiff also argues that he states a plausible MCDCA claim in this civil action, because Nationstar engaged in debt collection and he properly pleads a claim under Sections 14-202(8) and 14-202(11) of the MCDCA. *Id.* at 13-19. Lastly, the Plaintiff argues that he also states a plausible MCPA claim in this matter, because Nationstar's alleged violations of the MCDCA constitute *per se* violations of the MCPA. *Id.* at 20. And so, the Plaintiff requests that the Court deny Nationstar's motion to dismiss. *Id.*

For the reasons that follow, a careful reading of the complaint shows that the Plaintiff states a plausible RESPA claim in this case, because he alleges facts to show that: (1)

Nationstar failed to conduct a reasonable investigation of the servicing errors alleged in his QWR/NOE and (2) he suffered damages as a result of Nationstar's actions. But the complaint also makes clear that the Plaintiff's Section 14-202(8) MCDCA claim is not plausible, because the complaint lacks sufficient facts to show that Nationstar had knowledge of the invalidity of the debt at issue in this case, but continued to enforce that debt. The complaint also makes clear that the Plaintiff's Section 14-202(11) MCDCA claim is not plausible, because the complaint lacks sufficient facts to show that the Plaintiff is a protected "consumer" under Section 803 of the FDCPA. Lastly, a careful reading of the complaint shows that the complaint lacks sufficient factual allegations to show that Nationstar engaged in unfair or deceptive trade practices, to state a plausible claim under the MCPA. And so, the Court: (1) **GRANTS-in-PART** and **DENIES-in-PART** the Defendant's motion to dismiss and (2) **DISMISSES** the Plaintiff's RESPA statutory damages claim in Count 1 of the complaint and Counts 2 and 3 of the complaint.

### A. The Plaintiff States A Plausible RESPA Claim

As an initial matter, the Court is satisfied that the Plaintiff states a plausible RESPA claim in the complaint. To state a claim under RESPA's QWR provisions, the Plaintiff must allege facts to show: "(1) a written request that meets RESPA's definition of a QWR, (2) the servicer failed to perform its duties, and (3) actual damages." *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 417 (D. Md. 2018) (citations omitted). In this regard, RESPA defines "servicing" as:

> [R]eceiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3). In addition, Regulation X defines "error," in relevant part, as the "[f]ailure to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law," and "[i]mposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower." 12 C.F.R. § 1024.35(b)(2) and (5). And so, this Court has held that a valid QWR either: "(1) request[s] information related to the servicing of the plaintiff's loan, or (2) alleg[es] an accounting error with plaintiff's loan." *Barr*, 303 F. Supp. 3d at 418.

In this case, it is undisputed that the Plaintiff's letter dated July 30, 2024, meets the definition of a QWR under RESPA. *See generally* ECF Nos. 3, 15, and 15-1. And so, the

8

Court considers whether the complaint alleges sufficient facts to establish the second and third elements of the Plaintiff's RESPA claim.

A careful reading of the complaint shows that the Plaintiff alleges sufficient facts in the complaint to show that Nationstar failed to perform its obligations under RESPA in response to the Plaintiff's QWR/NOE. In this regard, it is undisputed that Nationstar timely responded to the Plaintiff's QWR/NOE. *See* ECF Nos. 3, 15, and 15-1. But, the Plaintiff alleges facts to show that Nationstar committed a servicing "error," when it failed to accept the Plaintiff's $14,933.72 payment on July 1, 2024. *See* ECF No. 3 at ¶¶ 31-34.

To support this claim, the complaint also alleges that the Plaintiff sent this payment to Nationstar, because Nationstar instructed him to do so in the company's Notice. *See* ECF No. 3 at ¶¶ 24-25 (alleging that the Plaintiff's payment conformed with Nationstar's Notice stating that: "You have a right to cure the default. To cure the default, you must pay the total amount past due of $14,933.72 by 07/04/2024 (or if said date falls on Saturday, Sunday, or legal holiday, then on the first business day thereafter)."). The Plaintiff also alleges that Nationstar's response to the QWR/NOE was confusing and inconsistent, because the response states that $14,933.72 "was required to cure the default as of the date of the [N]otice," but, Nationstar's response did not offer an explanation for why the Notice also states: "To cure the default, you must pay the total amount past due of $14,933.72 by 07/04/2024." *Id.* at ¶ 25. In addition, the Plaintiff alleges that Nationstar's response to his QWR/NOE was inadequate, because his QWR/NOE requested a breakdown of the fees and interests charged by Nationstar, but Nationstar's response only provided an aggregation of all the fees into a broad category of an "Corporate Advance Balance," without explaining what it is, or what fees were included. *Id.* at ¶¶ 26-27.

Taken as true, these factual allegations are sufficient to show that Nationstar violated RESPA, by failing to address the alleged errors in the servicing of the subject mortgage loan and failing to explain, or reconcile the discrepancy between the instructions in Nationstar's Notice and Nationstar's decision to reject the Plaintiff's timely payment. These factual allegations, taken as true, are also sufficient to show that Nationstar did not comply with RESPA, by failing to provide the Plaintiff with a breakdown of the fees and interests charged on the subject loan in its response to the QWR/NOE. *See id.* at ¶¶ 23-27; *see also Barr*, 303 F. Supp. 3d at 417. And so, when construed in the light most favorable to the Plaintiff, the Court is satisfied that the factual allegations in the complaint show that Nationstar failed to perform its duties under RESPA.

The Court also agrees with the Plaintiff that the complaint contains sufficient factual allegations to show that he is entitled to recover actual damages stemming from Nationstar's alleged noncompliance with RESPA.  In the complaint, the Plaintiff alleges that Nationstar's refusal to accept his timely payments, along with its deficient investigation of, and response to, his QWR/NOE, prolonged the servicing errors regarding the subject loan and exacerbated the Plaintiff's injuries, including that the Plaintiff incurred additional interest fees, out of pocket expenses and loss of equity in the Property.  *See* ECF No. 3 at ¶ 30.  Again, these allegations, taken as true, are sufficient to state a plausible claim for actual damages under RESPA.  *Fox*, 629 F. Supp. 3d at 310 (D. Md. 2022) (holding that a plaintiff must show that damages arose "as a result of" the servicer's alleged violation, to establish actual damages).

The Court also observes that the Plaintiff alleges emotional distress in this case and the Court recognizes that "emotional distress," alone, is not sufficient to show actual damages under RESPA.  *Id.* at 311.  But the complaint makes clear that the Plaintiff's damages claim couples his alleged emotional distress with other harms, such as the additional interest fees, out-of-pocket expenses and loss of equity, to support his claim for actual damages.  ECF No. 3 at ¶ 30.  And so, the Court is satisfied that the Plaintiff alleges a plausible claim to recover actual damages under RESPA.

The Court agrees, however, with Nationstar that the complaint lacks sufficient factual allegations to support a claim for statutory damages under RESPA.  To state a claim for statutory damages under RESPA, the Plaintiff must allege facts that show Nationstar has engaged in "a pattern or practice of noncompliance" with RESPA.  12 U.S.C. § 2605(f)(1)(B); *see also Akkus v. Rocket Mortg., LLC*, 715 F. Supp. 3d 726, 732 (D. Md. 2024).  The Plaintiff has not done so here.  Notably, in the complaint, the Plaintiff alleges that, "upon information and belief," Nationstar has demonstrated a pattern or practice of RESPA noncompliance.  *See* ECF No. 3 at ¶ 36.  But the Plaintiff does not allege any facts to show a pattern or practice of RESPA noncompliance.  *See Akkus,* 715 F. Supp. 3d at 731 (holding that one RESPA violation is not sufficient to show a pattern or practice of RESPA noncompliance.).  Given this, the Court DENIES the Defendant's motion to dismiss the Plaintiff's RESPA claim in Count I of the complaint, with the exception of the Plaintiff's claim for statutory damages, which is not plausible.

### B.  The Plaintiff Fails To State A Plausible MCDCA Claim

Turning to the Plaintiff's MCDCA claim in Count 2 of the complaint, the Court agrees with the Defendant that the complaint lacks sufficient factual allegations to state a plausible claim under either Sections 14-202(8) or 14-202(11) of the MCDCA.  To state a claim under

the MCDCA, the Plaintiff must allege facts to show that: (1) Nationstar "did not [possess] the right to collect the amount of debt sought;" and (2) Nationstar "attempted to collect the debt knowing that they lacked the right to do so." *Barr*, 202 F. Supp. 3d at 420 (quoting *Lewis v. McCabe, Weisberg & Conway, LLC*, 2014 WL 3845833, at *6 (D. Md. Aug. 4, 2014)) (citation omitted). The Plaintiff's MCDCA claim is also subject to the heightened pleading standard under Fed. R. Civ. P. 9(b), which requires the Plaintiff to plead "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Butler v. Citizens Bank, N.A.*, No. 17-3417, 2018 WL 2840413, at *4, *5 (D. Md. June 11, 2018). In addition, the "knowledge" requirement under Section 14-202(8) of the MCDCA requires that the Plaintiff show that Nationstar "attempt[ed] to enforce a right with actual knowledge or with reckless disregard as to the falsity of the existence of the right." *Fontell v. Hassett,* 870 F. Supp. 2d 395, 407 (D. Md. 2012) (quoting *Bradshaw v. Hilco Receivables, LLC,* 765 F. Supp. 2d 719, 732 (D. Md. 2011)) (citing *Kouabo v. Chevy Chase Bank, F.S.B.,* 336 F. Supp. 2d 471, 475 (D. Md. 2004)) (internal citations and quotations omitted).

In this case, a careful reading of the complaint makes clear that the Plaintiff fails to satisfy these standards. In the complaint, the Plaintiff alleges that Nationstar violated Sections 14-202(8) and (11) of the MCDCA, by attempting to claim certain sums due from the Plaintiff that it knew were not in fact due and owing, including certain interest and fees charged on the subject mortgage loan, while Nationstar was also refusing to accept the Plaintiff's payments on that loan. ECF No. 3 at ¶¶ 40-42. But, the complaint lacks factual allegations to show, with particularity, that Nationstar had "actual knowledge" of the alleged inaccuracy regarding the outstanding loan balance, or that Nationstar knowingly rejected the Plaintiff's payments in order to accrue interest on that balance. *See id.* at ¶¶ 38-42; *see also Fontell,* 870 F. Supp. 2d at 407. Given this, the factual allegations in the complaint are not sufficient to show that Nationstar attempted to enforce a right with actual knowledge or with reckless disregard as to the falsity of the existence of the right. *Fontell,* 870 F. Supp. 2d at 407.

The Plaintiff's MCDCA claim under Section 14-202(11) is also implausible. Section 14-202(11) provides that a violation of the MCDCA occurs when a debt collector engages in any conduct that violates Sections 804 through 812 of the FDCPA. Md. Code Ann., Com. Law § 14-202(11); *see also* 15 U.S.C. § 1692b-e. The Plaintiff correctly observes that there is no knowledge requirement under Section 14-202(11). *Parker v. Goldman Sachs Mortg. Co. Ltd. P'shp*, 596 F. Supp. 3d 559, 569 (D. Md. 2022) (citing *Alexander v. Carrington Mortg. Services, LLC*, 23 F.4th 370, 373 (4th Cir. 2022)) (holding that "Section 14-202(11)

contains no scienter requirement"). But, to prevail on this claim, the Plaintiff must still allege facts to show, with particularity, how Nationstar violated Sections 804 through 812 of the FDCPA, including that he is a protected "consumer" under the FDCPA. *Butler*, 2018 WL 2840413, at *4 (holding that a MCDCA claim is subject to the heightened pleading standard under Federal of Civil Procedure 9(b)); *see also* Fed. R. Civ. P. 9(b); 15 U.S.C. § 1692b-e.

The complaint makes clear that the Plaintiff has not done so here, because the Plaintiff does not allege that he is a "consumer" as defined by the FDCPA. Under the FDCPA, a "consumer" means "any natural person obligated or allegedly obligated to pay any debt." *See* 15 U.S.C. § 1692(a)(3); *see also* 15 U.S.C. § 1692c-d (for the purpose of this section, the term "consumer" includes the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator.). But the Plaintiff does not allege facts to show that he was *obligated* to pay the mortgage loan at issue in this case, or that he was the executor or administrator for the Estate of Betsy Parrish. *See generally* ECF No. 3.

Given this, the Court agrees with Nationstar that the Plaintiff has not alleged facts to show that he is a protected "consumer" who may pursue a claim under the FDCPA. *See* ECF No. 17 at 7. And so, the Court also DISMISSES the Plaintiff's Section 14-202(11) MCDCA claim. Fed. R. Civ. P. 9(b) and 12(b)(6).

### C. The Plaintiff Fails To State A Plausible MCPA Claim

As a final matter, Nationstar also persuasively argues that the Plaintiff fails to state a plausible MCPA claim in this case, because the complaint lacks facts to show, with particularity, how Nationstar engaged in unfair or deceptive trade practices. To state a claim under the MCPA, the Plaintiff must allege facts to show that: (1) Nationstar engaged in an unfair or deceptive practice or misrepresentation; (2) the Plaintiff relied upon the misrepresentation; and (3) in relying upon the misrepresentation caused the Plaintiff actual injury. *Barr*, 303 F. Supp. 3d at 416. In addition, the Plaintiff's MCPA claim is subject to the heightened pleading standard under Fed. R. Civ. P. 9(b), which requires the Plaintiff to plead "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 465 (D. Md. 2013).

A careful reading of the complaint makes clear that the Plaintiff does not allege sufficient facts, with particularity, to show that Nationstar made materially false and misleading oral or written statements, omissions, or other representations related to the amount due under his mother's mortgage loan. *See generally* ECF No. 3. Nor does the Plaintiff allege facts to show that he suffered damages as a result of Nationstar's alleged misrepresentations, because, as discussed above, the Plaintiff does not allege facts to show

that he was liable for the debt on his mother's mortgage loan. *See generally id.* The Plaintiff also cannot rely upon his MCDCA claims to allege a *per se* violation of the MCPA in this case, because, as discussed above, the Plaintiff's MCDCA claim is not plausible. *See id.* at ¶ 49.

Given this, the Plaintiff fails to state a plausible MCPA claim in this case. *Barr*, 303 F. Supp. 3d at 416. And so, the Court must also DISMISS the Plaintiff's MCPA claim in Count 3 of the complaint. Fed. R. Civ. P. 9(b) and 12(b)(6).

## V.   CONCLUSION

For the forgoing reasons, the Court:

(1) **GRANTS-in-PART** and **DENIES-in-PART** Nationstar's motion to dismiss (ECF No. 15); and

(2) **DISMISSES** the Plaintiff's RESPA statutory damages claim in Count 1 of the complaint and Counts 2 and 3 of the complaint.

A separate Order shall issue.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge